defendant, may be disregarded under this section, was not decided in People v. McQuade, 110 N. Y. 284; 21 Abb. N. C. 449; 6 N Y, Cr. 36; 18 S. R. 288. Assignments of errors are to be considered and decided in view of the provisions of this section. Id.

If error is committed on the trial of the challenge for cause, it becomes merely technical when, after filling the panel, it appears that the use of the peremptory challenge did no harm to the defendant. People v. Larubia, 140 N. Y. 87; 55 S. R. 457; aff'g, 53 S. R. 415.

If evidence, of a kind most important and predominating, has been offered on the part of the defendant, and ruled out on the objection of the people and against the defendant's exception, such ruling is error which demands the reversal of the judgment of conviction. People v. Wood, 126 N. Y. 254; 36 S. R. 954. In such case, the appellate court is not at liberty, under this section, to say that the error is merely technical, or that the substantial rights of the defendant have not been affected. Id. This is so, even though the court may be inclin d to think that upon the whole case, with such evidence admitted, the defendant should have been convicted. Id.

The duty of the appellate division, under § § 542, 684 of the Code, to give judgment after hearing appeal without regard to technical errors or defects, or exceptions which do not effect the substantial rights of the parties, considered. People v. Wicks, 11 A. D. 539; 76 S. R. 630; 42 Supp. 630.

---

# Supreme Court — Third Department.

## July 6, 1897.

## PEOPLE v. EDWIN C. JARVIS.

1. PEDDLER—WHO IS.

A single sale of goods is insufficient to constitute a person a peddler.

2. SAME—LICENSE FEE.

A village, as a municipal corporation merely, has no inherent authority to require a license and impose either a fee or a tax upon any legitimate business.

3. SAME.

Such restraint placed upon a business cannot be sustained as legislation properly within the police power of the state.

4. SAME.

Ordinance which give authority to the board of trustees to subject to police regulation the business of selling goods by sample or upon order

within the village, does not give them any authority to tax such business or to substantially prohibit it.

Appeal from a judgment of the county court affirming a judgment of a police justice.

F. N. Gilbert, for appellant.

Bixby & Browne, for the People.

PARKER, P. J.—The defendant is a resident of the city of Binghamton, in this state, and is proceeded against for having, in violation of an ordinance of the village of Norwich, peddled and sold goods from house to house, and taken orders therefor, in that village. It is conceded that he had never taken out the required license. The evidence does not sustain the charge of peddling. The statement of Mrs. Lucy Peckham is evidently based upon hearsay, merely, and, as to every fact testified to by her, should be rejected. The case, therefore, depends entirely upon the evidence of the other witness, Ida O'Neil. From that it appears that on July 23, 1896, defendant sold and delivered to her three pounds of tea at her house in such village, and also took an order from her for more tea, to be thereafter delivered. It does not appear that he had ever sold or offered to sell anything at any other time or place in such village. He was not, therefore, a peddler, within the decision of Village of Stamford v. Fisher, 140 N. Y. 187, 35 N. E. 500. Hence the only charge sustained against him is that he had sold goods upon contract, and taken an order, at one house in the village, without a license so to do. And such is the situation assumed by the respondent attorney on the argument of this case. The ordinance which it is claimed he violated, so far as it applies to this case, reads substantially as follows :

" No person   *   *   * not a resident of the village of Norwich shall sell goods, wares or merchandise by sample, or upon order, or by contract from house to house, unless he shall have received a license so to sell, take orders or to make contracts. Such license rates shall be as follows: Auctioneers, $15 to $25 per day ; peddlers, agents, canvassers and hawkers on the streets, $5 to $10 per day; meat peddlers, $30 per year. Any person

violating this section shall be guilty of a misdemeanor as provided by section 3 of title 3 of chapter 374 of the Laws of 1895. "

It is manifest that the purpose and effect of this ordinance is to levy a tax upon the business of selling goods by a nonresident within the village of Norwich. It is not merely a license required by the way of regulating such business, in the interest of good order and the general safety of society. Although denominated a "license rate," the charge is made by the day,—not $10 for every license issued, but $10 for every. day the business is carried on. A license fee, properly so called, is such a sum as will compensate for the expense of issuing and recording the license, and, when the license is issued for the purpose of securing police control over the matter licensed, such further sum as will probably be incurred in inspecting and regulating such business. When such a license may lawfully be issued, such a fee may lawfully be charged; but in the case before us (without regard to the amount fixed) the fact that the charge is made, not for the license issued, but by the day, strongly indicates that the intent was to tax the business, and not to obtain compensation merely for licensing the same. But, when we consider the amount fixed, such an intent becomes clearly apparent. Ten dollars per day is far beyond any sum which we can fancy would be needed, either to compensate for issuing the license, or to meet any additional expense that the inspecting and regulating of such a business could possibly create. The article sold is perfectly harmless. The sale of it threatens neither the public health, morals, or safety, nor the good order of the community. No provision for public inspection of the same is made by the ordinance. Evidently none will be needed. No provision for rejecting any applicant is made. It seems that the license is to be issued to any one who will pay the charges. Plainly, the scheme is to raise money for revenue purposes, so far as any licenses are taken out, and to practically prohibit sales being made by nonresidents, to the advantage of those residing within the village and selling similar articles. Mayor, etc., v. Second Ave. R. Co., 32 N. Y. 261. It is a fundamental principle that the village, as a municipal corporation merely, has no inherent authority to require a license and impose either a fee or a tax upon any legitimate business. This is conceded, and the right to

enact this ordinance is claimed from the provisions contained in subdivision 30, § 3, tit. 3, c. 374, Laws 1895, that being the act under which the village is incorporated. Unless therefore, the ordinance can be sustained under the provisions of that act, it was unlawfully passed and is utterly void. Such provisions, so far as they affected this case, are substantially as follows : The board of trustees "are hereby authorized and empowered to regulate the sale of goods, wares and merchandise by samples, or upon order or by contracts by persons not residents of the village of Norwich, and to license such persons to sell such goods, wares and merchandise or take orders or make contracts for the same and fix the amount to be paid for such licenses. " It is claimed that this re- markable provision is not a legitimate or constitutional exercise of legislative power; that it is not only an unwarranted discrimina- tion against nonresident citizens, but that it is in restraint of trade and tends to create monopolies. If such a provision were ap- plied to and enforced in every incorporated village in this state, it is plain that it would so restrain the freedom to purchase and sell where one chooses that monopolies would be fostered in each village, and the business of the state greatly obstructed. And it it also difficult to see how such a restraint placed upon such a business can be sustained as legislation property within the police power of the state ; but without deciding or discussing that ques- tion, and assuming that the act in this respect is valid and opera- tive, the ordinance in question must be held invalid because it attempts to go far beyond any authority which the charter assumes to give. It it a fundamental and well settled principle of law that :

" When a municipal corporation is given the power to license useful trades and occupations, it cannot use the license as a tax to raise revenue, nor is it authorized to entirely prohibit the exercise of the trade or occupation by any excessive license fee. "

Such is the rule as stated in 13 Am. & Eng. Enc. Law, p. 532, and it is fully sustained, not only by the cases there cited, but by most writers on the subject, and many decisions. 1 Dill. Mun. Corp. (4th Ed.) § 357, p. 424, says:

" Concerning useful trades and employments, a distinction is to be observed between the power to ' license ' and the power to ' tax. '

In such cases the former right, unless such appears to have been the legislative intent, does not give the authority to prohibit, or to use the lciense as a mode of taxation with a view to revenue, but a reasonable fee for the license and the labor attending its issue may be charged. "

Also, in Cooley, Tax'n, c. 19, p. 408, the same rule is laid down. And in discussing the terms which the statute should use to confer the power to tax he says :

" It is perhaps impossible to lay down any rule for the con struction of such grants that shall be general, and at the same time safe; but, as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with suffi- cient certainly that the raising of revenue by means thereof was contemplated. "

See, also, upon this subject, 2 Dill. Mun. Corp. §§ 768, 763 ; Dunham v. Trustees, 5 Cow. 462 ; City of Brooklyn v. Nodine, 26 Hun, 512.

In the statute before us the language used is, " to regulate " and " to license. " As we have seen, these words of themselves do not confer the right to tax or prohibit, and no other words being used, the intendment is that regulation, merely, was the object. As there is nothing in the language, so also there is nothing in the nature of the subject, or in the circumstances, that indicates an intent to confer upon the trustees the power to tax the business in question. The provision is found in a section of the act giving authority to regulate hawking, peddling, auctioneering, gift sales, lotteries, etc.,—subjects which are generally placed under the regu- lation of the police. In other parts of the act there are plain and specific provisions for levying all taxes within the village, and it would be a strained and unreasonable construction of the statute to conclude that anything more than a power to subject to police regulations was by this section intended to be conferred. "Such taxes are apt to be inequitable, and the principle not free from danger of great abuse. Hence ordinances of this character ought not to be sustained unless the authority by expressly or otherwise

unequivocally conferred. " 1 Dill. Mun. Corp. (4th Ed.) § 357, note. Concede that this statute gives authority to the board of trustees to subject to police regulation the business of selling goods by sample or upon order, within the village, it clearly gives them no authority to tax such business, or to subsantially prohibit it. The scheme which the ordinance in question attempts to carry out is therefore not authorized by law. It is void, and the defendant should not have been held as a criminal for disregarding it. The judgment of conviction is erroneous, and should have been reversed.

Judgments of county court and of police justice reversed.

All concur.

HERRICK, J.—I concur for reversal. I do not think the legislature had power to authorize the village authorities to impose either a tax or license fee upon nonresidents to which residents were not also subject. The fundamental law knows no distinction between residents of different political subdivisions of the state, and, while different laws may be enacted for different localities in the state as their varying needs may require, yet those laws must not discriminate between persons lawfully within their jurisdiction; for every resident of the state is entitled to the equal protection of equal laws, and is entitled to go to and fro, and buy, sell, and labor, in any and every part of the state, upon the same terms and conditions—no more, no less—that are imposed upon residents of that particular portion of the state where he chooses to exercise his rights; and any imposition of an additional burden upon him, as a condition of exercising his rights, is depriving him of the equal protection of equal laws, and is contrary to the law of the land.